CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 09 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| STEPHEN G. GAINER, | ) | |
| | ) | Civil Action No. 5:10-cv-85 |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | By: Hon. Glen E. Conrad |
| SPOTSWOOD COUNTRY CLUB, | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

Stephen G. Gainer, a former employee of the defendant, Spotswood Country Club ("Spotswood"), filed this pro se action alleging that Spotswood improperly terminated him from his employment position. Spotswood moved to dismiss each of Gainer's claims and has also moved to strike as superfluous one of Gainer's responsive filings. After additional briefing, both parties agreed to submit the matter to the court without oral argument. For the reasons set forth below, Spotswood's motion to strike will be denied. Its motion to dismiss will be granted in part and denied in part.

I. **Factual and Procedural Background**

The following facts are presented in the light most favorable to the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Gleaned from the relevant filings, the pertinent facts appear as follows: Gainer—currently fifty-one years old—was employed by Spotswood as a maintenance painter from December of 2007, to early July of 2008. His direct supervisor was Steve Hand, the club house manager. Gainer's employment proceeded without incident—and indeed some distinction[1]—until the end of June. At one point in particular, Gainer had exerted unusual effort

---

[1] Gainer received an "employee of the month" award during his seven-month period of employment with Spotswood.

in preparing for an event, and "Mr. K,"[2] Spotswood's general manager, complimented him and told him to sit back and drink a few beers—which Gainer did.

On June 27, 2008, however, Gainer was called into a meeting with Mr. K, Steve Hand, and the pool manager. Gainer was told that one of the women who worked at the snack bar by the pool had complained that he had sexually harassed her by hugging her. Gainer defended himself, claiming that the woman always ran up to him and hugged him and had done so on this particular occasion. Gainer's version of events was supported by the pool manager. Gainer then requested that he be permitted to file a sexual harassment complaint against the woman "since she was the one who instigated it and then complain[ed] about me." (Docket No. 15.) Mr. K allegedly refused to allow him to do so, informing Gainer that nothing would go on his work record and that the incident would "stay in the office." (Docket No. 15.) Gainer opposed Mr. K's refusal to permit him to file a complaint, but agreed to make efforts to avoid the woman in the future.

Shortly afterwards, Gainer expressed his frustration over the incident—including his distaste for the general manager's refusal to allow him to file a sexual harassment complaint—to a fellow Spotswood employee. It appears that by July 1, 2008, many other Spotswood employees knew about the incident. On July 2, Hand notified Gainer that he should not report to work for the rest of the week. When Gainer called him back the next week to inquire whether he still had a job, Hand told him that he had been terminated because Mr. K thought Gainer "ran [his] mouth too much." (Amended Complaint at 1.) Gainer alleges that he was terminated because he informed fellow employees of his opposition to Mr. K's refusal to allow him to file a sexual harassment complaint.

---

[2]Gainer has not identified this individual's full name.

Gainer subsequently filed for unemployment benefits. Spotswood did not dispute this claim and informed the Virginia Employment Commission that Gainer had been terminated due to a lack of work. The day after Gainer was fired, however, Spotswood re-assigned another of its employees, Brian Miller, to perform Gainer's maintenance job. Miller is "20 to 25 years younger" than Gainer. (Docket No. 16.)

When Gainer filed a charge of discrimination with the Equal Employment Opportunity Commission, Spotswood represented that it had terminated Gainer because of multiple violations of its sexual harassment and alcohol use policies. Gainer received a right-to-sue letter and filed this suit shortly thereafter.

Gainer's Amended Complaint cites three causes of action: "age discrimination" under the Age Discrimination in Employment Act ("ADEA"); "retaliatory discharge"; and "wrongful termination." Although Gainer does not specify whether the latter two claims proceed under federal or state law, a liberal construction of his pleadings suggests that he essentially proceeds upon three claims in addition to his age discrimination claim: (1) retaliation in violation of the ADEA; (2) retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); and (3) wrongful discharge in violation of Virginia state law.

The case is now before the court on Spotswood's motion to strike and on its motion to dismiss each of Gainer's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Motion to Strike Gainer's "Memorandum of Support"

As a threshold matter, Spotswood urges the court to strike the "Memorandum of Support" filed by Gainer on October 6, 2010 (Docket No. 16). Gainer filed a Complaint on August 24, 2010 and filed an Amended Complaint three days later. On September 22, Spotswood filed an

answer and also filed both a motion to dismiss and a memorandum in support of its motion to dismiss. On October 6, Gainer likewise made two filings with the court: "Plaintiff's Reply to Defendant's Motion To Dismiss," and a "Memorandum of Support for Age Discrimination Complaint." (Docket Nos. 15 and 16.) Attached to the latter is a letter that Gainer had written to Spotswood shortly after the events in this case took place, describing them in some detail. (Docket No. 16 Ex. A.)

Spotswood argues that the "Memorandum of Support" does not qualify as a pleading under Federal Rule of Civil Procedure 7(a) and that it should therefore be struck. This court, however, is under an obligation to hold pleadings filed by a pro se litigant "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Indeed, Gainer has acknowledged that he "didn't state everything in my complaint. I thought from what I had read that it would come out in discovery so I do apologize for this oversite [sic]." (Docket No. 15.) Spotswood's motion to strike the "Memorandum of Support" must therefore be denied.

### III. Motion to Dismiss

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," viewing the complaint in the light most favorable to the plaintiff. Erickson, 551 U.S. at 94 (citations omitted); see also De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991). Still, the complaint must contain sufficient factual allegations that, when accepted as true, the complaint "state[s] a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).

Consequently, a complaint consisting of bare legal conclusions is insufficient to survive a motion to dismiss. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" or if it consists of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

Nevertheless, "[a]n employment discrimination claim need not include specific facts establishing a prima facie case of discrimination to survive a Rule 12(b)(6) motion, but 'instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief.'" Ray v. Amelia County Sheriff's Office, 302 F. App'x 209, 211 (4th Cir. 2008) (per curiam) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002)).

A.   **ADEA Claims**

   1.   Age Discrimination

The ADEA forbids "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To properly plead an age discrimination claim under the ADEA, a plaintiff must allege that (1) he was at least forty years old; (2) he was qualified for his position; (3) he suffered an adverse employment

action despite his qualifications; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff. See Ray, 302 F. App'x at 211; Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006).

In this case, Gainer has alleged that he was older than forty, was performing his job satisfactorily, was terminated, and that his position was filled by an applicant who was approximately twenty years younger than him. The court therefore concludes that, at this stage in the proceedings, it cannot dismiss Gainer's age discrimination claim. See Swierkiewicz, 534 U.S. at 512 ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases").

2. Retaliation

Gainer's ADEA retaliation claim does not meet with the same success. The defendants contest whether Gainer even intends to allege a claim of retaliation under the ADEA, but it suffices to observe that he has in any case insufficiently done so. To properly allege retaliation under the ADEA, a plaintiff must plead that "(1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action." Laber, 438 F.3d at 432.

It is clear that Gainer has not alleged that he engaged in any protected activity relating to any perceived age-based discrimination prior to being terminated. According to his allegations, Gainer raised the specter of age discrimination for the first time in his EEOC charge of discrimination. But this charge was filed only after he had already been terminated. His ADEA retaliation claim must therefore be dismissed.

### B. Title VII Retaliation Claim

Gainer also alleges that Spotswood violated Title VII by illegally retaliating against him for engaging in protected conduct. See 42 U.S.C. § 2000e-3(a). In order to state a claim for retaliation, Gainer must allege "that he opposed an unlawful employment practice or participated in a charge or other proceeding under Title VII; that he has suffered an adverse employment action; and that there is a causal connection between the two." Balazs v. Liebenthal, 32 F.3d 151, 158 (4th Cir. 1994). See also E.E.O.C. v. Navy Federal Credit Union, 424 F.3d 397, 406 (4th Cir. 2005).

Spotswood contends that Gainer's claim fails on the first element, as he has failed to allege that he opposed or participated in protected conduct. The United States Court of Appeals for the Fourth Circuit has clarified this element as follows:

> Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities. Whether an employee has engaged in protected opposition activity, turns upon balancing the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel. We have previously held that under this balancing test, as long as an employee complains to his or her employer or participates in an employer's informal grievance procedure in an orderly and nondisruptive manner, the employee's activities are entitled to protection under [Title VII's] opposition clause. Participation activity encompasses, as outlined in the statute, making a charge, testifying, or participating in any manner in a Title VII investigation, proceeding, or hearing.

Kubicko v. Ogden Logistics Services, 181 F.3d 544, 551 (4th Cir. 1999) (citations omitted).

The court recognizes that the allegations in this respect are thin. Title VII does not protect an employee from the consequences of describing at will his own allegedly-harassing conduct to other employees. Still, it appears that Gainer has alleged that he was terminated because he

7

protested that Mr. K had stonewalled his efforts to file a sexual harassment complaint. Spotswood insists that the mere desire to file a sexual harassment complaint is not protected conduct. But the attempt to file such a complaint—an attempt allegedly foiled only by the employer's refusal to countenance it—certainly is. See Kubicko, 181 F.3d at 551. Spotswood has cited no legal authority to the contrary, and the court must conclude that, at this stage in the case—at which the court must take the facts pled by Gainer at face value—Gainer has adequately pled a retaliation claim under Title VII. Accordingly, Spotswood's motion to dismiss this claim will be denied.

C. **State Law Wrongful Discharge Claim**

As indicated previously, the court construes Gainer's filings to allege a wrongful discharge claim under Virginia state law. Gainer has not alleged that he was anything other than an at-will employee of Spotswood and is thus unprotected by any contractual provisions regarding the termination of his employment. His claim is governed only by Virginia common law.

Under the common law doctrine of employment at-will, "either party ordinarily is at liberty to terminate the contract at will upon giving reasonable notice of intention to terminate." Dray v. New Market Poultry Products, Inc., 518 S.E.2d 312, 313 (Va. 1999). Virginia has recognized a narrow exception to this rule such that an employee who is discharged in violation of public policy may mount a wrongful termination suit against his ex-employer. See id. It is clear, however, that a plaintiff mounting a state law wrongful termination claim must allege that his discharge violated a public policy that is recited in a Virginia statute. See Lawrence Chrysler Plymouth Corp. v. Brooks, 465 S.E.2d 806, 809 (Va. 1996) ("Brooks does not have a cause of

action for wrongful discharge because he is unable to identify any Virginia statute establishing a public policy that Lawrence Chrysler violated."). The Virginia Supreme Court has reiterated that, "[w]hile virtually every statute expresses a public policy of some sort, we continue to consider this exception to be a narrow exception and to hold that termination of an employee in violation of the policy underlying any one [statute] does not automatically give rise to a common law cause of action for wrongful discharge." Rowan v. Tractor Supply Co., 559 S.E.2d 709, 711 (Va. 2002).

Although the Virginia Human Rights Act ("VHRA") clearly prohibits discrimination in employment on the basis of age and gender, see VA. CODE § 2.2-3901, it is well-established that the Virginia General Assembly has "eliminated a common law cause of action for wrongful termination based on any public policy which is reflected in the VHRA, regardless of whether the policy is articulated elsewhere." Conner v. National Pest Control Ass'n, Inc., 513 S.E.2d 398, 400 (Va. 1999). Rather, "statutory causes of action [are] the exclusive avenues for pursuing a remedy for an alleged violation of any public policy 'reflected in' the VHRA." Id. Accordingly, Gainer may not rely upon the public policies expressed in the VHRA to support his state law wrongful termination claim.

Gainer fails, however, to identify any other statute that recites a public policy that is flouted by his discharge by Spotswood. To be sure, Gainer claims that his termination for "running his mouth" violates his First Amendment rights. Unfortunately for Gainer, however, "the First Amendment does not apply to private employers"; it protects speech only from interference by state actors. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 817 n. 5 (4th Cir. 2004).

Nor does Virginia state law otherwise support Gainer's claim. In fact, Virginia ascribes to

9

the general common law principle that refuses to recognize "a generalized, common-law 'whistleblower' retaliatory discharge claim." Dray, 518 S.E.2d at 313. In Dray, the Court refused to allow an employee at a poultry processing plant to pursue a common law claim for wrongful discharge even when she alleged that she had been fired because she had informed government inspectors of unsanitary conditions at the plant. Id. at 313. Here, Gainer appears to allege that he was fired for resisting his employer's unresponsiveness to his sexual harassment claims. As has been previously indicated, these allegations may give rise to a claim of illegal retaliation under applicable federal statutes. Nevertheless, under Dray, Gainer's state law wrongful discharge claim must fail.

## IV. Conclusion

For the foregoing reasons, the court will deny Spotswood's motion to strike and will grant in part and deny in part Spotswood's motion to dismiss Gainer's claims.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER: This 9th day of December, 2010.

_____
Chief United States District Judge